UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------

NIZAMETTIN GOKDOGAN,
ABDULLAH KEKLIKCI, and
HAYDAR MAVRUK,

                       Plaintiffs,

              v.

SLAP SHOT PIZZA ENTERPRISES LTD.,
DPH ENTERPRISES, LTD.,
HAMPTON BAYS DPZ LLC,
W&N ENTERPRISES LTD., and
CHRISTOPHER HANLEY,

                    Defendants.

**MEMORANDUM & ORDER**
20-CV-5201 (MKB) (ST)

------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiffs Nizamettin Gokdogan, Abdullah Keklikci, and Haydar Mavruk commenced the

above-captioned action against Defendants Slap Shot Pizza Enterprises Ltd. ("Slap Shot"), DPH

Enterprises, Ltd. ("DPH"), Hampton Bays DPZ LLC ("DPZ"), W&N Enterprises Ltd. ("W&N"),

and Christopher Hanley on October 28, 2020, with (1) Mavruk alleging violations of Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the New York State

Human Rights Law, N.Y. Exec. Law § 290, *et seq.* ("NYSHRL") against Slap Shot, DPH, DPZ,

and W&N, (2) Gokdogan and Keklikci alleging violations of Title VII and the NYSHRL against

Slap Shot, (3) Keklikci alleging violations of the Age Discrimination in Employment Act of

1967, 29 U.S.C. § 621 *et seq.* ("ADEA") and the Americans with Disabilities Act of 1990, 42

U.S.C. § 1201 *et seq.* ("ADA") against Slap Shot, and (4) all Plaintiffs alleging violations of the

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law

("NYLL") against Slap Shot and Hanley.  (Compl. ¶¶ 194–253, Docket Entry No. 1.)  DPZ

moved to dismiss Mavruk's claims against it pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, or, in the alternative, to sever the claims against it pursuant to Rule 21 of the Federal Rules of Civil Procedure, and Mavruk opposed the motion.  (DPZ's Mot. to Dismiss or Sever ("DPZ's Mot"), Docket Entry No. 19; DPZ's Mem. in Supp. of DPZ's Mot. ("DPZ's Mem."), Docket Entry No. 19-2; Mavruk's Mem. in Opp'n to DPZ's Mot. ("Mavruk's Opp'n"), Docket Entry No. 19-6.)  On February 16, 2021, Judge Sandra J. Feuerstein referred DPZ's motion to Magistrate Judge Steven Tiscione for a report and recommendation.[1]  (Order dated Feb. 16, 2021.)

By report and recommendation dated August 4, 2021, Judge Tiscione recommended that the Court grant DPZ's motion to dismiss (the "R&R").  (R&R, Docket Entry No. 22.)  The R&R did not address the portion of DPZ's motion seeking to sever the claims against it.  (*Id.*)  On August 18, 2021, Mavruk timely filed objections to the R&R.  (Mavruk's Obj. to R&R ("Mavruk's Obj."), Docket Entry No. 23.)[2]  For the reasons set forth below, the Court adopts the R&R in part as to Judge Tiscione's recommendations that the Court (1) construe the Rule 12(b)(1) motion as a Rule 12(b)(6) motion, and (2) consider Mavruk's Equal Employment Opportunity Commission charge and right to sue notice on this motion, and declines to adopt the R&R as to the merits of the motion to dismiss.  The Court denies DPZ's motion to dismiss and motion to sever.

---

[1]  The case was reassigned to the undersigned on June 14, 2021.  (Order dated June 14, 2021.)

[2]  Because Mavruk's objections are not paginated, the Court refers to the pagination assigned by the electronic filing system.

## I.   Background

The Court assumes familiarity with the underlying facts as detailed in the R&R and provides only a summary of the pertinent facts.  The Court assumes the truth of the factual allegations in the Complaint for the purposes of this Memorandum and Order.

### a.   Factual background

#### i.   The parties

Slap Shot, a New York domestic business corporation, operates a pizza store doing business as Domino's Pizza, located at 232-C East Main Street, Patchogue, New York 11722. (Compl. ¶¶ 16–19.)  Hanley is the Chief Executive Officer of Slap Shot.  (*Id.* ¶ 23.)

DPH is a New York domestic business corporation that operates a pizza store doing business as Domino's Pizza, located at 260 West Montauk Highway, Hampton Bays, New York 11946.  (*Id.* ¶¶ 24–27.)

DPZ is a New York domestic business corporation which is located at 4 Shinnecock Avenue, East Quogue, New York 11942.  (*Id.* ¶ 33.)  DPZ operates a pizza store doing business as Domino's Pizza located at 260 West Montauk Highway, Hampton Bays, New York 11946. (*Id.* ¶ 34.)

W&N is a New York domestic business corporation and operates a pizza store doing business as Domino's Pizza, located at 229 Route 112, Coram, New York 11727.  (*Id.* ¶¶ 39–41.)

Hanley holds an ownership interest and equity in all four companies.  (*Id.* ¶¶ 22, 30, 37, 44, 50).  Hanley "exercised control over the terms and conditions of Plaintiffs' employment with . . . Slap Shot, and Plaintiff Mavruk's employment with . . . DPH, DPZ[,] and W&N" and also controlled the "business and financial operations" of Slap Shot, DPH, DPZ, and W&N.  (*Id.* ¶¶ 46, 48.)  "Plaintiffs could complain to . . . Hanley directly regarding any of the terms of their

employment, and . . . Hanley would have the authority to effect any changes to the quality and terms of Plaintiffs' employment." (*Id.* ¶ 47.) Hanley also "had the authority to hire and fire Plaintiffs during the entirety of their employment with . . . Slap Shot, and Plaintiff Mavruk during the entirety of his employment with . . . DPH, DPZ[,] and W&N" and to "do more than carry out personnel decisions during the entirety of Plaintiffs' employment with . . . Slap Shot, and Plaintiff Mavruk's employment with the Defendants DPH, DPZ[,] and W&N." (*Id.* ¶¶ 51–52.)

### ii. Mavruk's employment at Slap Shot

In or around March of 2007, Mavruk, who is Turkish and Muslim, commenced employment at a Domino's Pizza located at 179 Route 112, Patchogue, New York 11772. (Compl. ¶¶ 15, 57.) When that restaurant was closed, Mavruk was transferred to work at Slap Shot doing business as Domino's Pizza, located at 232-C East Main Street, Patchogue, New York 11772, where he worked as a delivery driver. (*See id.* ¶¶ 19, 58–59.) While employed with Slap Shot, Mavruk was a "stellar employee" and "satisfactorily performed his duties and responsibilities." (*Id.* ¶ 60.)

Until March of 2019, Plaintiffs reported to Menderes Duran, the manager of Slap Shot. (*Id.* ¶ 66.) On or about March 10, 2019, Paul Cabrera became the new manager of Slap Shot, and his brother, Luther Cabrera, became the assistant manager. (*Id.* ¶¶ 67–68.) Hanley hired Paul and Luther, both of whom are Hispanic. (*Id.* ¶¶ 69, 74.) Paul and Luther had "the right to hire, fire, promote, demote, reward[,] and sanction Plaintiffs during their respective employment with Slap Shot" and the right to "control the terms and conditions of Plaintiffs' employment with Slap Shot." (*Id.* ¶¶ 71–72.)

4

Plaintiffs were treated less favorably than similarly situated Hispanic employees while under the supervision of Paul and Luther. (*Id.* ¶¶ 73–75.) Hispanic employees were "assigned large and/or multiple deliveries, while Plaintiffs and other Turkish employees[] were given only small or single deliveries," which resulted in Plaintiffs earning fewer tips. (*Id.* ¶ 76.) While Hispanic employees "performed deliveries and earned tips, Turkish employees, including Plaintiffs, were ordered to do non-tipped work" including cleaning the bathrooms, washing the dishes, working in the kitchen, putting in and taking out pizza from the oven, cleaning the store, sweeping and mopping the floor, and taking out the garbage. (*Id.* ¶ 77.) Slap Shot provided Hispanic employees with winter coats and refused to provide any coats to its Turkish employees, including Plaintiffs. (*Id.* ¶ 78.) Hispanic employees were allowed to eat pizza for free, while Turkish employees were required to pay for their pizza. (*Id.* ¶ 79.) Before Paul and Luther became Plaintiffs' supervisors, Slap Shot employed ten to twelve Turkish employees, but after they became supervisors, "most of [the] Turkish employees were terminated and they were replaced with Hispanic employees." (*Id.* ¶ 81.)

Once Paul and Luther became Mavruk's supervisor, Mavruk's hours were cut from forty hours per week to eight hours per week, while Slap Shot hired at least five to six Hispanic employees. (*Id.* ¶ 82.) Keklikci's hours were decreased from forty to four hours per week, and Gokdogan was frequently sent home early, sometimes as early as 6pm during a 4pm to 12am shift, while Hispanic employees were "allowed to continue working and earn more money." (*Id.* ¶ 84.)

From March of 2019 until July of 2019, Paul and Luther frequently used derogatory and insulting language toward Mavruk including calling him a "[f]**king Turk," "son of the [b]**ch," "motherf**ker," "basura," which means "[g]arbage" in Spanish, and "[p]ollo," which

means "chicken" in Spanish.  (*Id.* ¶ 87.)  Hispanic employees were treated "with courtesy and respect."  (*Id.* ¶ 87.)  Gokdogan and Keklikci were called similar names.  (*Id.* ¶¶ 90–91.)  Paul and Luther would "speak amongst themselves and other Hispanic employees in Spanish while laughing and pointing at Plaintiffs."  (*Id.* ¶ 92.)

Plaintiffs also alleged that they were discriminated against on the basis of their religion. During the month of Ramadan, Plaintiffs were denied "a reasonable religious accommodation by allowing them to take a small break after the sunset, so they could have some water and food." (*Id.* ¶ 98.)  Paul and Luther told Gokdogan: "Why do you fast? Don't be stupid! There is no reason to fast and starve yourself!"  (*Id.* ¶ 97.)  Keklikci was frequently told "[i]f you are fasting, go and keep it at home! You have to work here!"  (*Id.* ¶ 100.)  Paul and Luther would "intentionally give [Plaintiffs] a slice of pepperoni, pork sausage, bacon, or ham pizza[] to further harass and intimidate Plaintiffs because of their religion."  (*Id.* ¶ 101.)  "When . . . Keklikci inquired if a clean knife could be used to slice a plain pizza (so that he would not touch pork in violation of his religion), Paul and Luther Cabrera would ignore his request to further harass and intimidate him . . . ."  (*Id.* ¶ 102.)  As a result, Keklikci would "often bring his own lunch, while Hispanic employees were allowed to eat a free lunch at Slap Shot."  (*Id.* ¶ 103.) Plaintiffs never received an employee handbook that addressed Slap Shot's policies on employment discrimination.  (*Id.* ¶ 104.)

From March of 2019 until July of 2019, Mavruk "opposed . . . Slap Shot's discriminatory practices to no avail."  (*Id.* ¶ 141.)  In response, he was told to "get the f**k out of here."  (*Id.* ¶ 141.)  After Mavruk complained about Slap Shot's alleged discriminatory practices, "he continued to be assigned materially worse duties" such as cleaning, "and his hours were regularly cut."  (*Id.* ¶ 142.)  In July of 2019, Mavruk complained to Hanley about Paul and

Luther "cutting his work hours, making derogatory comments towards him, and assigning him materially worse duties." (*Id.* ¶ 143.)  In response, Hanley told Mavruk "Don't worry! They are just joking!" (*Id.* ¶ 144.)  Hanley transferred Mavruk "to work at DPH[,] DPZ[,] and W&N." (*Id.* ¶ 146.)  DPH and DPZ were located thirty miles from Slap Shot.[3]  (*Id.* ¶ 147.)

### iii.   Mavruk's employment at DPZ and DPH

Mavruk was transferred to work at "DPH/DPZ, located at 252 W[est] Montauk [Highway], Hampton Bays, [New York] 11946." [4]  (*Id.* ¶ 148.)  From May until July of 2019, Mavruk was paid by DPH, but from July until November of 2019, he was paid by DPZ.  (*Id.* ¶¶ 149–150.)  Mavruk reported to "Carlos" and a cousin of Paul and Luther named "Fred," both of whom are Hispanic.  (*Id.* ¶¶ 151–153.)  Mavruk was the only Turkish employee "among numerous Hispanic employees." (*Id.* ¶ 154.)  Carlos and Fred would "make derogatory comments toward . . . Mavruk such as '[f]**king Turk,'" call him a "motherf**er," and, in response to his request for a religious accommodation, tell him to "[d]o your f**king worship before you come [into] work!" (*Id.* ¶¶ 155–157.)  On one occasion, Mavruk was required to work at 11am on a Friday, and his request to "go to the Friday prayer" was denied.  (*Id.* ¶ 158.)

---

[3]  Keklikci also alleges discrimination by Slap Shot on the basis of his age and disability, and all Plaintiffs allege violations of the FLSA and NYLL by Slap Shot and Hanley.  (Compl. ¶¶ 194–253.)  Because the instant motion only concerns Mavruk's claims against DPZ, the Court does not set forth the details of the age and disability allegations or the alleged FLSA and NYLL violations.

[4]  The Complaint provides conflicting dates regarding when Mavruk was transferred from Slap Shot.  The Complaint first states that Hanley transferred Mavruk to Slap Shot where he worked until July of 2019, (*see* Compl. ¶¶ 58, 141, 143), but later states that Mavruk was "transferred to work at DPH/DPZ, located at 252 W[est] Montauk [Highway], Hampton Bays, NY 11946" in May of 2019, (*see id.* ¶ 148).  The Complaint also provides two separate addresses for the location for DPZ's store, first stating that DPZ operates a pizza store located at 260 West Montauk Highway in Hampton Bays, (*see* Compl. ¶ 34), and then stating that Mavruk was transferred to work at DPH/DPZ located at 252 West Montauk Highway in Hampton Bays, New York, (*see id.* ¶ 148).

When he tried to pray "for a few minutes in the back room by putting his head down to the floor, Carlos and Fred did not let him pray." (*Id.*)  Mavruk alleges that Carlos fired him "on the pre-textual grounds that business was slow," but at the time he was doing twenty to twenty-five deliveries, "which was considered to be busy." (*Id.* ¶ 159.)  None of the Hispanic employees were fired. (*Id.*)  When Mavruk complained to Hanley about Carlos and Fred's behavior, he was transferred to W&N. (*Id.* ¶ 160.)

### iv.   Mavruk's employment at W&N

Mavruk worked at W&N, located at 2229 Route 112 in Coram, New York from December of 2019 until January 10, 2020. (*Id.* ¶ 161.)  Mavruk reported to the managers Daisy and Bob. (*Id.* ¶ 162.)  Daisy and Bob asked Mavruk, "[w]hy did you come here, [f]**king Turk? . . . Why this location? . . . Could [you not] find another place to work at?" (*Id.* ¶ 164.)  In or around December of 2019, Daisy told Mavruk that "Muslim people are evil" because they "slaughter an animal" during the Islamic holiday Eid al-Adha. (*Id.* ¶ 165.)  When Mavruk would ask for pizza without pork, he was told: "No! If you don't eat pork, go eat sh*t!" (*Id.* ¶ 166.)  On one occasion, Daisy and Bob gave Mavruk a slice of pizza containing pork while informing him that it did not contain pork. (*Id.* ¶ 167.)  Once he finished his slice, they informed him that it did, in fact, have pork, which left Mavruk feeling "disgusted, emotionally distraught[,] and extremely humiliated." (*Id.*)

Mavruk complained to Hanley about Daisy and Bob's behavior to no avail. (*Id.* ¶ 168.)  On January 10, 2020, after Mavruk complained to Hanley, Daisy and Bob cut Mavruk's hours down from forty hours per week to two hours per week. (*Id.* ¶ 169.)  Mavruk alleges that he "had no choice[] but to accept his constructive termination." (*Id.* ¶ 170.)

###### v.   Mavruk's EEOC charge

On May 20, 2020, Mavruk filed charges of discrimination with the EEOC (the "EEOC Charge").  (*Id.* ¶ 7; EEOC Charge, annexed to Mavruk's Opp'n as Ex. A, at 21, Docket Entry No. 19-6.)  In the EEOC Charge, Mavruk listed his employers as "DPH Enterprises LTD d/b/a Domino's Pizza" located at 252-8 West Montauk Highway in Hampton Bays, New York, and "W&N Enterprises LTD d/b/a Domino's Pizza" located at 2229 Route 112 #1 in Coram, New York.  (EEOC Charge 1.)  Mavruk listed additional respondents including "Slapshot Pizza Enterprise Ltd d/b/a Domino's Pizza, located at 232-C East Main Street, Patchogue, New York 11772," and "Domino's Pizza, located at 260 W[est] Montauk [Highway]" in Hampton Bays, New York.  (*Id.*)  Mavruk's EEOC Charge states that he was transferred to the store at 252 West Montauk Highway after he was employed at Slap Shot and complained to Hanley in September of 2019.  (See EEOC Charge 2.)  Mavruk's EEOC Charge states that he was managed by Carlos, one of his alleged supervisors at DPH and DPZ, at the store located at 252 West Montauk Highway in Hampton Bays, New York.  (*See id.* at 1–2.)

On September 16, 2020, the EEOC issued Mavruk a notice of right to sue ("EEOC Right to Sue Notice").  (EEOC Right to Sue Notice, annexed to Compl. as Ex. B, Docket Entry No. 1-4.)

##### b.   Report and recommendation

Judge Tiscione recommended that (1) the Court construe DPZ's motion to dismiss pursuant to Rule 12(b)(1) as a motion to dismiss pursuant to Rule 12(b)(6), (2) the Court consider Mavruk's EEOC Charge and Right to Sue Notice, and (3) the motion to dismiss be granted because Mavruk failed to exhaust his administrative remedies under Title VII.  (R&R 5–14.)

First, Judge Tiscione recommended that the Court construe DPZ's motion as a motion to dismiss pursuant to Rule 12(b)(6) because DPZ moved to dismiss on the grounds that Mavruk failed to exhaust his administrative remedies with respect to his discrimination claims, but failure to exhaust is not a jurisdictional prerequisite.  (*Id.* at 5.)  Judge Tiscione noted that "DPZ . . . mischaracterize[s] Title VII's statutory requirement as a jurisdictional prerequisite and therefore erroneously invokes Rule 12(b)(1)."  (*Id.*)  Accordingly, Judge Tiscione found that this argument is properly raised in a Rule 12(b)(6) motion as an affirmative defense.  (*Id.* at 5–6.)

Next, Judge Tiscione recommended that the Court consider the EEOC Charge, which was attached to the Mavruk's opposition to DPZ's motion.  (*Id.* at 7–8.)  Judge Tiscione noted that "[c]ourts in this Circuit have repeatedly held that when EEOC charges are expressly referred to in the pleading, they may be considered incorporated by reference, and thus may be considered when deciding a motion to dismiss."  (*Id.* (quoting *Sutter v. DiBello*, No. 18-CV-817, 2021 WL 930459, at *59 (E.D.N.Y. Mar. 10, 2021)).)

Finally, Judge Tiscione considered whether Mavruk exhausted his administrative remedies by identifying "Domino's Pizza, located at 260 W[est] Montauk [Highway] Hampton Bays, [New York] 11946" in lieu of DPZ in the EEOC Charge, and whether the Right to Sue Notice pertained to DPZ.  (*Id.* at 8–10.)  Judge Tiscione found that Mavruk failed to exhaust his administrative remedies as to DPZ because he failed to name DPZ in the EEOC Charge, failed to make any mention of events occurring at the Domino's Pizza location operated by DPZ, and never mentioned DPZ.[5]  (*Id.* at 8–9.)  Although not raised by Mavruk, Judge Tiscione also *sua sponte* evaluated whether the Court should apply the identity of interest exception to Mavruk's

---

[5]  Judge Tiscione stated that Mavruk did not make any "allegations pertaining to DPZ or the Domino's Pizza[] located at 260 W[est] Montauk [Highway] Hampton Bays, [New York] 11946."  (R&R 10.)

failure to exhaust administrative remedies. (*Id.* at 10–14.) Judge Tiscione found that the identity of interest exception did not apply because (1) Mavruk was "aware of the identity of DPZ prior to filing the EEOC Charge" because he "conceded that he was paid by . . . DPZ from July to November [of] 2019," (*id.* at 12), (2) Mavruk failed to establish that the interests of Slap Shot, DPH, W&N, and DPZ are so similar that it would be "unnecessary to include DPZ in the EEOC proceedings," (*id.*), (3) DPZ was prejudiced by the lack of notice because it "did not have actual notice of the claims against it until the Complaint was filed" and "DPZ was never given an opportunity to be present at any EEOC proceedings," (*id.* at 12–13), and (4) while "[i]t is not entirely clear what representations were made to Mavruk about his relationship with DPZ," he "does not contend that DPZ misled him about which corporate entity was his employer" and was aware that he was "first paid by DPH[] and then later by DPZ" based on his allegations in the Complaint, (*id.* at 13). In addition, Judge Tiscione also noted that Mavruk "had the benefit of counsel in preparing and filing his EEOC Charge" and some courts "hold that where a plaintiff was represented by counsel at the time of the EEOC charge, the failure to include a party categorically prohibits him from lodging a Title VII claim against the omitted party." (*Id.* at 11, 13.)

###        c.    **Mavruk's objections to the R&R**

Mavruk objects to Judge Tiscione's finding that Mavruk failed to exhaust his administrative remedies. (Mavruk's Obj. 1–2.) Mavruk argues that (1) he described the incidents of discrimination that took place at "Domino's Pizza, located at 260 W[est] Montauk [Highway]" in Hampton Bays, New York "which is operated by DPZ" in his EEOC Charge, and (2) he satisfies the four identity-of-interest-exception factors. (*Id.* at 1–8.)

## II.   Discussion

### a.   Standards of review

#### i.   Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected.  *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015).  The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record.  *See John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015) (applying the clear error standard when no objections to the magistrate judge's report and recommendation were filed).  The clear error standard also applies when a party makes only conclusory or general objections.  Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [magistrate judge's] proposed findings and recommendations."); *see also Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) ("[M]erely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))); *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding that "general objection[s] [are] insufficient to obtain *de novo* review by [a] district court").

Whether clear error review or *de novo* review applies when an objecting party reiterates the arguments made to the magistrate judge is unclear.  While the Second Circuit has suggested

that clear error review is appropriate if a party's objection to a magistrate judge's report and

recommendation repeats arguments already presented to and considered by the magistrate judge,

*see Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments

does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) . . . ."), the Second

Circuit has more recently stated that it is "skeptical" that the clear error standard would be

appropriate when the objection is based on a previously asserted argument, *see Moss v. Colvin*,

845 F.3d 516, 520 n.2 (2d Cir. 2017) ("[W]e are skeptical that clear error review would be

appropriate in this instance, where arguably 'the only way for [the plaintiff] to raise . . .

arguments [on that point] [was] to reiterate them.'" (third and fourth alterations in original) (first

quoting *Watson v. Geithner*, No. 11-CV-9527, 2013 WL 5441748, at *2 (S.D.N.Y. Sept. 27,

2013); and then citing 28 U.S.C. § 636(b)(1))).  *See also Joseph v. Korn*, No. 19-CV-7147, 2021

WL 912163, at *1 (E.D.N.Y. Mar. 9, 2021) ("Although '[o]bjections that reiterate arguments

considered and rejected by the magistrate are reviewed for clear error,' in an abundance of

caution, this [c]ourt reviews [the] [p]laintiff's arguments *de novo*." (first quoting *Cruz v. Colvin*,

No. 13-CV-1267, 2014 WL 5089580, at *1 (S.D.N.Y. Sept. 25, 2014); and then citing *Parker v.

Comm'r of Soc. Sec'y Admin.*, No. 18-CV-3814, 2019 WL 4386050, at *6 (Sept. 13, 2019)));

*Harewood v. New York City Dep't of Educ.*, No. 18-CV-5487, 2021 WL 673476, at *6 (S.D.N.Y.

Feb. 22, 2021) ("[W]hen the objections simply reiterate previous arguments or make only

conclusory statements, the court should review such portions of the report only for clear error."

(first citing *Dickerson v. Conway*, No. 08-CV-8024, 2013 WL 3199094, at *1 (S.D.N.Y. June 25,

2013); and then citing *Kirk v. Burge*, 646 F. Supp. 2d 534, 538 (S.D.N.Y. 2009))); *Castorina v.

Saul*, No. 19-CV-991, 2020 WL 6781078, at *1 (S.D.N.Y. Nov. 18, 2020) ("While courts in this

[d]istrict sometimes state that objections that 'simply reiterate [the] original arguments' merit

only clear error review, this rule lacks support in either 28 U.S.C. § 636(b)(1)(C) or Rule 72(b)(2) of the Federal Rules of Civil Procedure.  The Second Circuit has expressed similar skepticism." (alteration in original) (citations omitted)).

### ii.  Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021); *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 570).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *Vaughn*, 957 F.3d at 145 (same).

### iii.  Rule 21

Rule 21 of the Federal Rules of Civil Procedure provides, in pertinent part, that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party."  Fed. R. Civ. P. 21; *see also Chartwell Therapeutics Licensing, LLC v. Citron Pharma LLC*, No. 16-CV-3181, 2020 WL 7042642, at *6 (E.D.N.Y. Nov. 30, 2020) ("Federal Rule of Civil Procedure 21 states that a court may 'sever any claim

against a party.'" (quoting Fed. R. Civ. P. 21)).  Courts may order severance under Rule 21,

"even without a finding that joinder is improper, if joinder 'will not foster the objectives of the

rule, but will result in prejudice, expense or delay.'"  *Wood v. Perdue Pharm. Co.*, No. 21-CV-

6447, 2021 WL 3887948, at *4 (S.D.N.Y. Aug. 27, 2021) (quoting Wright & Miller, Fed. Prac.

& Proc. § 1652 (3d ed.)).  Thus, if the Court determines that a defendant has been improperly

joined under Rule 20 or would be prejudiced by joinder, it has "broad discretion" under Rule 21

to sever the defendant or the claims against that defendant from the action.  *See Syville v. City of

New York*, No. 20-CV-570, 2020 WL 2508788, at *2 (S.D.N.Y. May 15, 2020) ("Courts have the

authority to deny joinder, or to order severance under Rule 21 of the Federal Rules of Civil

Procedure, even without a finding that joinder is improper, if joinder 'will not foster the

objectives of the rule, but will result in prejudice, expense or delay.'" (quoting *McPhearson v.

N.Y.S. Dep't of Corr. & Cmty. Supervision*, No. 17-CV-2531, 2018 WL 10128029, at *3

(S.D.N.Y. June 19, 2018))).

> ### b.   Unopposed portions of the R&R

No party has objected to Judge Tiscione's recommendations that the Court (1) construe

DPZ's motion to dismiss for lack of jurisdiction as a motion to dismiss for failure to state a claim

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, (*see* R&R 5–6), and

(2) consider the EEOC Charge and Right to Sue Notice attached to Mavruk's opposition as

incorporated by reference and documents of which judicial notice can be taken, (*see id.* at 7–8).

The Court has reviewed the unopposed portions of the R&R and, finding no clear error, adopts

the recommendation pursuant to 28 U.S.C. § 636(b)(1).

c.   **Mavruk has exhausted his administrative remedies as to his Title VII claims**

Mavruk argues that the R&R erroneously recommended that his claims against DPZ be dismissed for failure to exhaust administrative remedies because he exhausted his administrative remedies by filing the EEOC Charge against Domino's Pizza located at 260 West Montauk Highway in Hampton Bays, New York, which was the entity identified as his employer on his paychecks, and because the Right to Sue Notice regarding Charge No. 520-2020-05313 pertains to DPZ.  (*See* Mavruk's Obj. 3–6.)  In addition, Mavruk argues that even if the EEOC Charge did not explicitly name DPZ, the identity-of-interests test is satisfied because (1) DPZ's "usage of different entity names . . . makes it difficult to ascertain its role," (*id.* at 6), (2) DPH and DPZ operated out of the same location and shared management, and therefore had similar interests such that "it would be unnecessary to include the unnamed party in the EEOC proceedings," (*id.* at 7), (3) Mavruk "gave [the] administrative agency the opportunity to investigate, mediate[,] and take remedial action" by providing the EEOC with DPZ's address and telephone number, (*id.* at 7), and (4) DPZ represented to Mavruk that its "relationship with him was to be through the named party" — the Domino's Pizza located at 260 West Montauk Highway — because he received paychecks with Domino's Pizza identified as his employer while the W-2 "was issued by DPZ for the same time period," (*id.* at 7–8).

Under Title VII, a complainant must "exhaust" his administrative remedies by filing a complaint with the EEOC or an authorized state agency prior to the commencement of a Title VII action in federal court, and that complaint must name the defendant.  *See Edo v. Antika Pizzeria Astoria, Inc.*, 852 F. App'x 618, 619 (2d Cir. 2021) ("Before an individual may bring a Title VII suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent state agency." (quoting *Williams v. N.Y.C. Hous.*

*Auth.*, 458 F.3d 67, 69 (2d Cir. 2006))); *McPartlan-Hurson v. Westchester Cmty. Coll.*, 804 F.

App'x 41, 43 (2d Cir. 2020) ("Pursuant to Title VII and the ADA, a plaintiff must exhaust her

administrative remedies by filing a charge with the EEOC within 300 days of a discriminatory

act." (citing 42 U.S.C. §§ 2000e-5(e)(1), 12117(a))); *Rasko v. N.Y.C. Admin. for Children's*

*Servs.*, 734 F. App'x 52, 54 (2d Cir. 2018) ("Under Title VII, a plaintiff in New York must file a

complaint with the EEOC within 300 days of a discriminatory act." (first citing 42 U.S.C.

§ 2000e-5(e)(1); and then citing *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 599 (2d Cir. 1999)));

*Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991) (citing 42 U.S.C. § 2000e-5(e)).

However, the Second Circuit recognizes an exception to the general rule, permitting a

Title VII action against a party unnamed in the administrative complaint if there is an "identity of

interest" between the unnamed party and the party named in the administrative complaint,

provided the unnamed party had notice that its conduct was being investigated.[6] *Carcasole–*

---

[6] Some courts in this Circuit hold that the identity-of-interest exception is only available
to plaintiffs that were not represented by counsel at the time of the EEOC charge. *See, e.g.*,
*Gagliardi v. Universal Outdoor Holdings, Inc.*, 137 F. Supp. 2d 374, 379 (S.D.N.Y. 2011)
(stating that the "identity of interest exception . . . is limited to situations where a plaintiff was
not represented by counsel at the time the EEOC charge was filed"). However, other courts have
declined to adopt such a limitation to *pro se* cases and have noted that such a limitation "rests on
dictum from [*Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991)]." *See Gerald v. DCV*
*Holdings, Inc.*, No. 17-CV-6525, 2021 WL 2809915, at *3 (E.D.N.Y. July 6, 2021) (collecting
cases). In view of Judge Tiscione's recommendation that the Court consider but not fully rely on
whether a plaintiff was legally represented and the dicta in *Johnson*, *see Johnson* 931 F.2d at 209
(noting that EEOC "charges generally are filed by parties not versed in the vagaries of Title VII
and its jurisdictional and pleading requirements"), this Court considers whether a plaintiff was
represented by counsel at the time of filing the EEOC charge, but does not find legal
representation dispositive. *See Gerald*, 2021 WL 2809915, at *3 (agreeing with "the view that
Plaintiff's legal representation at the time of EEOC filing is 'informative' when considering
certain *Johnson* factors, but not dispositive"); *Payne v. McGettigan's Mgmt. Servs. LLC*, No. 19-
CV-1517, 2020 WL 2731996, at *4 (S.D.N.Y. May 26, 2020) ("While the Second Circuit
observed that EEOC charges were 'generally' filed without the assistance of counsel, it created a
multi-part test that did not include a complainant's pro se status as one element of the test. It
stated without reservation that Title VII suits may 'proceed against an unnamed party where

*Lacal v. Am. Airlines, Inc.*, No. 04-CV-5082, 2005 WL 1587303, at *1 (2d Cir. Jul. 7, 2005)

(noting the identity-of-interest test is a "recognized exception"); *Fischman v. Mitsubishi Chem.*

*Holdings Am., Inc.*, No. 18-CV-8188, 2020 WL 7388654, at *2 (S.D.N.Y. Dec. 16, 2020) ("The

'identity of interest' exception, however, 'permits a Title VII action to proceed against an

unnamed party where there is a clear identity of interest between the unnamed defendant and the

party named in the administrative charge.'" (quoting *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615,

619 (2d Cir. 1999))); *Harris v. NYU Langone Med. Ctr.*, No. 12-CV-0454, 2013 WL 3487032, at

*9 (S.D.N.Y. July 9, 2013) ("[B]ecause EEOC charges 'generally are filed by parties not versed

in the vagaries of Title VII and its jurisdictional and pleading requirements, [the Second Circuit]

[has] recognized an 'identity of interest' exception' to the rule requiring plaintiffs to properly

exhaust their claims." (second and third alterations in original) (quoting *Vital*, 168 F.3d at 619–

20)), *report and recommendation adopted as modified*, 2013 WL 5425336 (S.D.N.Y. Sept. 27,

2013).  In determining whether a plaintiff has properly exhausted administrative remedies, the

Second Circuit has adopted a "flexible stance . . . so as not to frustrate Title VII's remedial

goals." *Johnson*, 931 F.2d at 209 (quoting *Egelston v. State Univ. Coll. at Geneseo*, 535 F.2d

752, 754, 755 (2d Cir. 1976))).  To determine whether an "identity of interest" exists, the court

must consider four factors:

> 1) whether the role of the unnamed party could through reasonable
> effort by the complainant be ascertained at the time of the filing of
> the EEOC complaint; 2) whether, under the circumstances, the
> interests of a named [party] are so similar as the unnamed party's
> that for the purpose of obtaining voluntary conciliation and
> compliance it would be unnecessary to include the unnamed party
> in the EEOC proceedings; 3) whether its absence from the EEOC
> proceedings resulted in actual prejudice to the interests of the
> unnamed party; 4) whether the unnamed party has in some way

---

there is a clear identity of interest between the unnamed defendant and the party named in the
administrative charge.'" (quoting *Johnson*, 931 F.2d at 209)).

> represented to the complainant that its relationship with the
> complainant is to be through the named party.

*Vital*, 168 F.3d at 619 (quoting *Johnson*, 931 F.2d at 209–10) (alteration in original); *see also*

*Gerald v. DCV Holdings, Inc.*, No. 17-CV-6525, 2021 WL 2809915, at *3 (E.D.N.Y. July 6,

2021) (describing the *Johnson* factors).

While DPZ is not specifically named in the EEOC Charge, (*see generally* EEOC

Charge), the Court finds that Mavruk has pled sufficient facts to find an identity of interest at this

stage of the litigation.  The first factor — whether Mavruk could have ascertained the role of the

unnamed party through reasonable effort at the time of the filing of the EEOC Charge — is

neutral.  Mavruk was aware at the time of filing his EEOC Charge that three of the four

Domino's Pizza locations listed in his Complaint were operated by distinct entities because he

included DPH, W&N, and Slap Shot Pizza in his EEOC Charge.  (*See* EEOC Charge); *see also*

*Manos v. Geissler*, 377 F. Supp. 2d 422, 427 (S.D.N.Y. 2005) (finding that the first factor

weighed in favor of the unnamed party when the plaintiff knew that the named party was a

franchisee of the unnamed party).  Therefore, it is possible that Mavruk and his counsel had

constructive notice that the fourth Domino's Pizza location had a similar corporate structure and

was also operated by another entity.  However, in the Complaint, Mavruk alleges that he was

transferred to work at "DPH/DPZ, located at 252 W[est] Montauk [Highway], Hampton Bays,

[New York] 11946."  (Compl. ¶ 148.)  In his EEOC Charge, Mavruk also alleges that he was

transferred to work at the Domino's Pizza location at 252 West Montauk Highway in Hampton

Bays, New York.  (*See* EEOC Charge 2.)  Despite working at the same physical location, the

only change was the entity that paid Mavruk.[7]  (*Id.* ¶¶ 149–150.)  Because only the entity that

---

[7]  In support of his objections to the R&R, Mavruk attaches his paychecks providing the
address of the entity noted on his wages.  However, the Court declines to consider the paychecks

19

paid Mavruk changed and his physical location of employment remained the same, Mavruk may

not have been aware that ownership of his employer had changed.  *See Frilando v. N.Y.C.*

*Transit Auth.*, 463 F. Supp. 3d 501, 512–13 (S.D.N.Y. 2020) (stating that "[t]here was no reason

for [the] [p]laintiff to know the corporate relationships among [the] [d]efendants and the [named

party]" when the defendants were subsidiaries of the named party); *Crosby v. McDonald's of

Guilderland, LLC*, No. 17-CV-1160, 2018 WL 2077884, at *11 (N.D.N.Y. May 2, 2018)

(finding that the first factor weighed in the plaintiff's favor when the plaintiff "and his counsel

had no reason to suspect that there had been a change in ownership and [the unnamed defendant]

took no steps to reveal its role as the owner of the [f]ranchise").

  Although the first factor of the *Johnson* test is neutral, the second, third, and fourth

factors weigh in favor of allowing Mavruk to name DPZ as a party in the instant suit.  The

second factor — whether the interests of Slap Shot, DPH, and W&N are so similar as DPZ's

---

on this motion to dismiss because they were not attached to the Complaint as an exhibit,
incorporated by reference, or integral to the Complaint.  *See Nicosia v. Amazon.com, Inc.*, 834
F.3d 220, 230–31 (2d Cir. 2016) (holding that courts may consider on a motion to dismiss "any
written instrument attached to [the complaint] as an exhibit or any statements or documents
incorporated in it by reference" and other documents "integral" to the complaint (first quoting
*Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); and then quoting *DiFolco v.
MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010))); *L-7 Designs, Inc. v. Old Navy, LLC*,
647 F.3d 419, 422 (2d Cir. 2011) ("A complaint is [also] deemed to include any written
instrument attached to it as an exhibit, materials incorporated in it by reference, and documents
that, although not incorporated by reference, are 'integral' to the complaint." (alteration in
original) (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004))).  In the Complaint, Plaintiffs
only reference payment by DPZ in general terms, stating that in or around July to November of
2019, Mavruk "was paid by the Defendant DPZ."  (Compl. ¶ 150.)  This allegation is insufficient
to incorporate the paychecks by reference because it does not mention the paychecks
specifically.  *Cf. Reid v. Toyota Motor Credit Corp.*, No. 12-CV-7436, 2013 WL 1397143, at *4
(S.D.N.Y. Apr. 8, 2013) (finding a check integral to the complaint when the operative complaint
"repeatedly refer[red] to the 'EFT instrument' [the plaintiff] sent to [the defendant], and relies
heavily upon the effect of that instrument as a basis for [the plaintiff's] conclusion that his debt
to [the defendant] was 'discharged' such that the repossession was improper"), *report and
recommendation adopted*, 2013 WL 3776201 (S.D.N.Y. July 18, 2013).

interest that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings — weighs against DPZ. Based on the facts alleged in the Complaint, Slap Shot, DPH, and W&N share management staff and employees.  For example, Plaintiff alleged that Hanley holds an ownership interest in all four entities, had the ability to carry out personnel decisions at all four entities, and transferred Mavruk to work at DPH, DPZ, and W&N at various points throughout his employment.  (*See* Compl. ¶¶ 23, 30, 37, 44, 50, 52, 147.)  Plaintiff also alleged that Carlos and Fred remained Mavruk's managers throughout his employment at the 252 West Montauk Highway store despite any ownership changes between DPH and DPZ.  (*See id.* ¶¶ 148–160.)  Accordingly, although DPH and DPZ might be distinct entities, DPZ had, at a minimum, constructive notice of Mavruk's EEOC Charge, and had a similar interest in complying with EEOC proceedings and representing that no discrimination occurred.  *See Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1242 (2d Cir. 1995) (finding that the named and unnamed parties have "identical" interests when the unnamed party "approves all personnel decisions at [the named party]"); *Duverny v. Hercules Med. P.C.*, No. 18-CV-7652, 2020 WL 1033048, at *9 (S.D.N.Y. Mar. 3, 2020) (finding that the unnamed party's "interest in resolving [the plaintiff's] charge was substantially similar to [the named parties]" when a named party's "responsive statement to the EEOC effectively captured [the unnamed party's] position that no discrimination had occurred" and "[the named party's] involvement also put [the named party] on notice of the charges" when the named party was "employed as [the unnamed party's] office manager).

The third factor — whether DPZ's absence from EEOC proceedings resulted in actual prejudice against it — weighs in Mavruk's favor because neither party has indicated that there was an EEOC hearing or proceeding and that DPZ's omission from the EEOC Charge resulted in

any prejudice. *Compare Cook*, 69 F.3d at 1242 ("[T]here were no EEOC proceedings in the

instant case and [the unnamed defendant] could not have been prejudiced in any way.");

*Frilando*, 463 F. Supp. 3d at 512–13 ("[T]he EEOC proceedings did not result in any prejudice

to the interests of [the] [d]efendants as the EEOC did not make any further investigation or

engage in attempts of conciliation between [the] [p]laintiff and the [named party].")", *with Manos*,

377 F. Supp. 2d at 427 (finding that the unnamed party was prejudiced when "[t]he EEOC tried

to resolve th[e] matter as evidenced by the [s]ettlement [a]greement" and the unnamed party

"had no involvement in the settlement[] and the alleged discrimination continued").

The fourth factor — whether DPZ has in some way represented to Mavruk that its

relationship with him is to be through the named parties — weighs in Mavruk's favor because no

facts in the Complaint or EEOC Charge indicate that Mavruk was informed that his relationship

was with DPZ instead of DPH.  To the contrary, based on the allegations in the Complaint, DPZ

represented that it was interchangeable with DPH because DPZ paid Mavruk's wages while he

was employed at the 252 West Montauk Highway location.  (*See* Compl. ¶¶ 149–150); *see also*

*Duverny*, 2020 WL 1033048, at *9 (finding that "[t]he final factor also points toward an identity

of interests between [the named defendant] and [the unnamed defendant]" because the unnamed

defendant represented to the plaintiff and the general public that it was interchangeable with the

named defendant and the plaintiff's "employee timesheets list her employer as [the named

defendant] while [the plaintiff's] weekly wage statements list [the unnamed defendant]"); *Cobb v.

XSPORT Fitness, Inc.,* No. 09-CV-3553, 2010 WL 1741370, at *6 (E.D.N.Y. Apr. 28, 2010)

("[B]y doing business as [the named party], [the unnamed party] represented to plaintiff that its

relationship with plaintiff was to be through its business, not corporate, name.").  Accordingly,

because all but one of the *Johnson* factors weighs in Mavruk's favor, and because the Court does

not find Mavruk's representation by counsel at the time he filed his EEOC Charge dispositive, the Court declines to adopt Judge Tiscione's recommendation as to exhaustion of administrative remedies and finds that there was sufficient identity of interest between DPZ and the respondents named in the EEOC Charge such that Mavruk exhausted his administrative remedies against DPZ.[8]  *See Cook*, 69 F.3d at 1242 (finding an identity of interests when the first factor weighed against the plaintiff and "factors two and three strongly favor[ed] allowing [the plaintiff] to name the [unnamed party] as a party defendant"); *Centeno v. 75 Lenox Realty LLC*, No. 14-CV-1916, 2017 WL 1214451, at *3 (E.D.N.Y. Mar. 31, 2017) (stating that "it is clear that a plaintiff need not satisfy each of the factors to be eligible for the [identity-of-interest] exception").

### d.  The Court declines to sever DPZ from this action

Neither the R&R nor Mavruk's objections address DPZ's motion to sever.  (*See* R&R; Mavruk's Obj.)  Because the Court finds that Mavruk properly exhausted his claims and because Mavruk also brings NYSHRL claims against DPZ, the Court addresses DPZ's motion to sever.

DPZ argues that the Court should sever all claims against DPZ from the original action because (1) Plaintiff's allegations of discriminatory conduct arise out of separate transactions and occurrences, (2) DPZ would be severely prejudiced based on their inclusion in the instant suit,

---

[8]  To the extent that the R&R can be read to suggest that all of Mavruk's claims against DPZ should be dismissed for failure to exhaust administrative remedies, (*see* R&R 10, 14), the Court notes that its discussion of administrative exhaustion only applies to Mavruk's Title VII claims against DPZ, not his NYSHRL claims against DPZ.  Unlike Title VII, the NYSHRL "does not require exhaustion of administrative remedies prior to bringing a civil lawsuit." *Drees v. County of Suffolk*, No. 06-CV-3298, 2007 WL 1875623, at *6 (E.D.N.Y. June 27, 2007); *see also Ross-Caleb v. City of Rochester*, 512 F. App'x 17, 17–18 (2d Cir. 2013) (holding that NYSHRL claims are not subject to the procedural requirements of Title VII claims); *De Lorenzo v. King Kullen Grocery Co.*, No. 19-CV-3460, 2020 WL 7047314, at *10 (E.D.N.Y. Aug. 12, 2020) ("Although one is required to exhaust federal employment discrimination claims, there is no such obligation under the NYSHRL."), *report and recommendation adopted sub nom. De Lorenzo v. King Cullen Grocery Co. Inc.*, No. 19-CV-3460, 2020 WL 7042835 (E.D.N.Y. Nov. 30, 2020).

and (3) different witnesses and documents proof would be required for the separate claims. (DPZ's Mem. 5–11.)

Mavruk argues that severance is inappropriate because (1) claims against DPH and DPZ arise out of the same series of transactions and occurrences, (2) there are common issues of law and fact between the claims, and (3) DPZ failed to demonstrate that it would sustain any prejudice and the interests of judicial economy substantially outweigh any prejudice.  (Mavruk's Opp'n 5–11.)  None of the other Plaintiffs oppose DPZ's motion to sever.

To determine whether to sever a party pursuant to Rule 21, courts in the Second Circuit consider whether:

> (i) "the claims arise out of the same transaction or occurrence"; (ii) the claims present common questions of law or fact; (iii) judicial economy (including possible settlement) would be served by severance; (iv) severance would avoid prejudice; and (v) different evidence is required for the separate claims.

*Chartwell Therapeutics Licensing, LLC*, 2020 WL 7042642, at *6 (quoting *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 918 (S.D.N.Y. 2016)); *Syville*, 2020 WL 2508788, at *2 ("In determining whether to deny joinder or order severance of parties, courts consider the requirements of Rule 20 and additional factors, 'including (1) whether severance will serve judicial economy; (2) whether prejudice to the parties would be caused by severance; and (3) whether the claims involve different witnesses and evidence.'" (quoting *Kehr v. Yamaha Motor Corp.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008)))).  Although courts generally sever when multiple factors are satisfied, only one factor must be met for the motion to sever to be granted.  *See Mosca v. City of New York*, No. 17-CV-4327, 2019 WL 5592855, at *2 (E.D.N.Y. Oct. 30, 2019) ("Only one of the foregoing factors needs to weigh in favor of severance for the motion to be granted, but courts generally only sever claims when more than one criterion is met." (citing *N. Jersey Media Grp. Inc. v. Fox News Network, LLC*, 312 F.R.D. 111, 114–15

(S.D.N.Y. 2015))); *see also Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968)

(stating that Rule 21 authorizes severance "even without a finding of improper joinder, where

there are sufficient other reasons for ordering a severance").  In considering a motion to sever, a

court should be "guided by 'considerations of convenience, avoidance of prejudice to the parties,

and efficiency.'"  *McPhearson*, 2018 WL 10128029, at *3 (quoting *Laureano v. Goord*, No. 06-

CV-7845, 2007 WL 2826649, at *8 (S.D.N.Y. Aug. 31, 2007)).

Mavruk brings Title VII and NYSHRL claims against Slap Shot, DPH, DPZ, and W&N,

and Gokdogan and Keklikci bring Title VII and NYSHRL claims against Slap Shot only.  (*See*

Compl. ¶¶ 1, 194–205, 219–229.)  The Court finds that severance of Mavruk's claims against

DPZ is not proper at this stage of the litigation.

### i.   Same transaction or occurrence

DPZ argues that Mavruk's allegations of discriminatory conduct against DPZ arise out of

separate transactions and occurrences because Mavruk attempts to "tie together the alleged

discriminatory conduct of several different and separate businesses under the auspices of one

nebulous body intent on singling him out."  (DPZ's Mem. 6.)  In support, DPZ contends that the

only similarities between Plaintiffs' allegations are "the term Plaintiffs claim their supervisors, in

all the different locations, used against them," and that the supervisors at each location were

"distinct and separate supervisors" with no connection to DPZ.  (*Id.* at 6–7.)  DPZ argues that it

is a "separately owned entity with no connection to Slap Shot, DPH[,] or W&N" and that

"Plaintiff's four month employment with DPZ cannot be conflated with the employment over the

course of his other three employers" because Plaintiff "fails to adequately establish a

commonality between the mistreatment that he allegedly received at the different locations." [9] (*Id.* at 7.)

Mavruk argues that his claims arise out of the same series of transactions or occurrences because he continued to report to Fred, the assistant manager, and Carlos, both of whom Mavruk alleges made comments to him based on his national origin and denied him religious accommodations before and after any change in ownership from DPH to DPZ. (Mavruk's Opp'n 8–9.)

In determining whether allegations are part of the same "transaction or occurrence," or the same series of transaction or occurrences, courts generally "look to the logical relationship between the claims and determine 'whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues

---

[9] In support of its motion, DPZ submitted a declaration from Carlos Gonzalez regarding the ownership of DPZ. (*See* Aff. of Carlos Gonzalez, annexed to DPZ's Mot. as Ex. B, Docket Entry No. 19-4.) In addition, DPZ asks the Court to consider that Mavruk failed to offer "any corroborating evidence" in support of his allegations regarding DPZ's involvement in the Complaint. (DPZ's Mem. 8.) However, courts in this district accept the allegations in the complaint as true for purposes of deciding an early-stage motion to sever. *See Iconix Brand Grp., Inc. v. Roc Nation Apparel Grp., LLC*, No. 17-CV-3096, 2019 WL 5203256, at *2 (S.D.N.Y. Sept. 26, 2019) (stating that when the parties briefed the motion to sever before any factual development in discovery, "the [c]ourt is required to accept the allegations made by the plaintiffs in their complaint and assume that all the matters alleged by them in the complaint are true and provable" (quoting *Viada v. Osaka Health Spa, Inc.*, 235 F.R.D. 55, 61 (S.D.N.Y. 2005))); *Allstate Ins. Co. v. Electrolux Home Prod., Inc.*, No. 17-CV-391, 2017 WL 10718329, at *3 (D. Conn. Sept. 18, 2017) (stating that "[c]ourts take allegations in a complaint as true for purposes of deciding a motion to sever," declining to consider evidence outside of the complaint "at this early stage of the proceedings before the parties have had the opportunity for factual development through discovery," and collecting cases); *Lyons v. Litton Loan Servicing LP*, No. 13-CV-513, 2014 WL 5039458, at *2 (S.D.N.Y. Sept. 29, 2014) ("[I]n assessing whether the requirements of [Rule 20] are met, courts must accept the factual allegations in a plaintiff's complaint as true." (second alteration in original) (quoting *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009))). Accordingly, because this motion to sever was briefed before discovery, the Court declines to consider DPZ's supporting affidavit and accepts all factual allegations in the Complaint as true.

be resolved in one lawsuit.'" *Allstate Ins. Co. v. Baturov*, --- F. Supp. 3d ---, ---, 2021 WL

2409681, at *1 (E.D.N.Y. June 14, 2021) (quoting *Kalie v. Bank of Am. Corp.*, 297 F.R.D. 552,

557 (S.D.N.Y. 2013))); *Jem Accessories, Inc. v. JVCKENWOOD USA Corp.*, No. 20-CV-4984,

2021 WL 706646, at *2 (S.D.N.Y. Feb. 22, 2021) ("In determining whether the 'transaction or

occurrence' requirement of Rule 20(a)(2) has been met, 'courts are to look to the logical

relationship between the claims and determine whether the essential facts of the various claims

are so logically connected that considerations of judicial economy and fairness dictate that all

issues be resolved in one lawsuit.'" (quoting *Trainum v. Rockwell Collins, Inc.*, No. 16-CV-7005,

2017 WL 1093986, at *2 (S.D.N.Y. Mar. 9, 2017))).  "Courts in this district have used the

Second Circuit's interpretation of [Rule] 13(a)(l)(A)'s 'transaction or occurrence' language as

guidance in interpreting the Rule 20 requirement."  *See Lyons v. Litton Loan Servicing LP*, No.

13-CV-513, 2014 WL 5039458, at *3 (S.D.N.Y. Sept. 29, 2014) (quoting *Peterson v. Regina*,

935 F. Supp. 2d 628, 637 (S.D.N.Y. 2013)); *see also Allstate Ins. Co. v. Electrolux Home Prod.,*

*Inc.*, No. 17-CV-391, 2017 WL 10718329, at *2 (D. Conn. Sept. 18, 2017) (quoting *Lyons*, 2014

WL 5039458, at *3).

Mavruk's discrimination allegations under Title VII and the NYSHRL are sufficient to

satisfy the transaction or occurrence factor.  The allegations concerning DPZ are not well fleshed

out.  For example, Plaintiffs provide two separate addresses for the location for DPZ's store, first

stating that DPZ operates a pizza store located at 260 West Montauk Highway in Hampton Bays,

(*see* Compl. ¶ 34), and then stating that Mavruk was transferred to work at DPH/DPZ located at

252 West Montauk Highway in Hampton Bays, New York, (*see id.* ¶ 148).  However, Mavruk

alleges that DPZ and DPH are connected through shared ownership by Hanley, common

management, and shared employees of the same store location.  (*See id.* ¶¶ 149–150 (stating that

27

both DPH and DPZ paid Mavruk during his employment at the same pizza store location); *id.* ¶ 151 (stating that Mavruk reported to Carlos and Fred throughout his employment with DPH and DPZ); *id.* ¶ 160 (stating that Hanley transferred Mavruk from DPZ to W&N following his complaints about Carlos and Fred); *id.* ¶¶ 23, 30, 44, 47, 50 (stating that Hanley had an ownership interest in all four entities for which Mavruk worked and had the authority to hear complaints from Plaintiffs about their employment and make personnel decisions).)  While Mavruk fails to provide dates for the alleged discriminatory acts and comments, Mavruk alleges that such harassment occurred on a "regular and pervasive basis" and that Carlos, his initial manager when first employed by DPH, was still his manager after DPZ took ownership of the store and at the time DPZ fired him on allegedly pretextual grounds.  (*Id.* ¶¶ 155–156, 159.) Because the Complaint alleges that Defendants acted jointly and alleges that shared personnel and management are a common thread among the Defendants, the Court finds that Mavruk's claims arise out of the same transaction or occurrence.  *See Navar v. Walsh Constr. Co. II, LLC*, No. 18-CV-10476, 2019 WL 7599890, at *1 (S.D.N.Y. Aug. 13, 2019) ("The [c]omplaint alleges that [the] [d]efendants, acting as a joint venture, maintained 'discriminatory policies, practices, and procedures in selection, pay, promotion, and advancement.  Even where there are factual differences in plaintiffs' respective claims . . . courts will still deny severance where plaintiffs allege that defendant[s'] wrongdoing occurred as part of a policy or practice.'" (quoting *Laser Kitten, LLC v. Marc Jacobs Int'l, LLC*, No. 17-CV-8613, 2019 WL 1147599, at *1–2 (S.D.N.Y. 2019))).  *Cf. Jem Accessories, Inc.*, 2021 WL 706646, at *4 ("Based on the facts alleged in the [a]mended [c]omplaint, [the defendants] are separate, independently owned companies — indeed competitors — who are not involved in the manufacture, sale, distribution, or marketing of the other's allegedly infringing products."); *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d

258, 264 (D. Conn. Apr. 10, 2012) (finding that the plaintiffs' claims, which arose out of their

employment in different Home Depot stores, in different states and under different

circumstances, were not logically related).

In addition, Mavruk alleges that Defendants discriminated against him in the same

manner — by making comments about his national origin and Turkish identity, (*see id.* ¶¶ 86–87

(describing insults leveled at Mavruk at Slap Shot including calling him a "[f]**king Turk")); *id.*

¶¶ 155–157 (describing comments made to Mavruk at DPH and DPZ including calling him a

"[f]**king Turk"); *id.* ¶ 164 (describing comments made by W&N managers Daisy and Bob who

called Mavruk a "[f]**king Turk")), denying him religious accommodations for prayer, (*see id.*

¶ 98 (describing Slap Shot management declining to provide a religious accommodation for

Plaintiffs after sunset for water and food); *id.* ¶ 158 (describing how Carlos and Fred at DPZ did

not allow Mavruk to pray in a back room)), threatening to give Plaintiffs pork in violation of

their religious beliefs, (*see id.* ¶¶ 101–102 (describing taunts about Mavruk eating pork at Slap

Shot); *id.* ¶ 166–167 (describing taunts about Mavruk eating pork at W&N and an incident where

he was tricked into eating pork)), and treating Hispanic employees more favorably by providing

them with more hours and better quality and higher paying tasks, (*see id.* ¶¶ 73–77 (stating that

the managers at Slap Shot treated Plaintiffs less favorably than Hispanic employees, including

assigning them deliveries that earned greater tips and assigning Turkish employees cleaning-

related tasks); *id.* ¶ 159 (describing how Mavruk was "fired" from DPH/DPZ by Carlos but no

Hispanic employees were fired); *id.* ¶ 169 (describing how Mavruk's hours were cut from forty

hours per week to two hours per week)).  These allegations are sufficient to show that Mavruk's

claims against DPZ arise out of the same series of transactions or occurrences as Mavruk's

claims against DPH, Slap Shot, and W&N, because they suggest that Defendants had the same

*modus operandi* of discriminating against Plaintiffs. *See Ardolf v. Weber*, 332 F.R.D. 467, 480 (S.D.N.Y. 2019) ("Plaintiffs all allege that they were injured by the same behavior on the part of [the] [d]efendant.  Indeed, [the] [d]efendant's *modus operandi* of molesting male models arises out of a series of the same transactions or occurrences with separate victims, each suffering from a nearly-identical violation . . . .  In other words, [the] [d]efendant's modus operandi is what logically ties all of [the] [p]laintiffs' claims together."); *Gerace v. Cliffstar Corp.*, No. 05-CV-65, 2009 WL 5042621, at *2 (W.D.N.Y. Dec. 15, 2009) (finding the transaction and occurrence test satisfied when "[a]ll three [p]laintiffs claim disability discrimination under the ADA and NYSHRL, all claim to have been denied reasonable accommodations, each received the same letters issued on the same dates informing them of their respective layoffs and terminations, and each claims to have suffered adverse job actions pursuant to a pattern and practice of disability discrimination").

Accordingly, the first factor weighs against severance.

### ii.   Common questions of law and fact

DPZ does not address whether there are common questions of law and fact.  (*See generally* DPZ's Mem.)

Mavruk argues that there are several common questions of law and fact.  (*See* Mavruk's Opp'n 9–11.)  In support, Mavruk identifies several common questions of law, including whether (1) DPH and DPZ took "any reasonable steps to prevent and promptly correct Fred's discriminatory behavior towards Mavruk from May [of] 2019 until July [of] 2019, and from July [of] 2019 and December [of] 2019 respectively," (2) DPH or DPZ provided any reasonable avenues for Mavruk to report discriminatory behavior, (3) DPH or DPZ are vicariously liable for discriminatory conduct toward Mavruk, and (4) Plaintiff's Turkish national origin was the

motivating factor behind his termination.  (*See id.* at 10–11.)  Mavruk also identifies several common questions of fact, including whether (1) Fred was employed by DPH or DPZ, (2) Fred continued to supervise Mavruk after DPZ purchased the pizza store from DPH, and (3) which staff continued to work for DPZ after DPH sold the store.  (*See id.* at 10.)

The Court agrees that there are substantial questions of law and fact in common between Mavruk's claims as to DPH and DPZ, as well as to the other Plaintiffs' Title VII and NYSHRL claims.  All Plaintiffs raise Title VII and NYSHRL claims for similar conduct as outlined in section II.d.i *supra*, therefore there are at least common questions of law as to whether Defendants' *modus operandi* constituted discrimination under Title VII and the NYSHRL.  *See Ardolf*, 332 F.R.D. at 480–81 ("All [p]laintiffs raise a single cause of action: a violation of the TVPA. . . . Therefore, '[a]t issue for all [p]laintiffs is at least one common question of law: whether [the] [d]efendant's *modus operandi* . . . constitutes sex trafficking.'" (citation omitted) (second alteration in original)); *Gerace*, 2009 WL 5042621, at \*3 ("Plaintiffs' claims clearly present common questions of law.  Each [p]laintiff alleges disability discrimination in violation of the ADA and the NYHRL.  The same legal standards apply to each [p]laintiff's claims.").  In addition, there are common questions of fact, particularly as to DPH and DPZ's ownership of the pizza store at which Mavruk worked, whether they operate as joint or single employers, and who controls personnel decisions at all four entities included in the Complaint.  *See Navar*, 2019 WL 7599890, at \*1 (finding common questions of law and fact, including "(1) the existence and extent of [j]oint [v]enture-wide discriminatory policies and practices and (2) whether [the] [d]efendants operate as a joint employer," sufficient to preclude severance).

Accordingly, the Court finds that the second factor weighs against severance.

31

iii.   **Remaining factors of judicial economy, witnesses and evidence, and prejudice**

DPZ argues that the remaining three factors weigh in its favor.  (*See* DPZ's Mem. 8–11.)

First, DPZ argues that severance is proper because "different witnesses and documentary proof would be required for the separate claims."  (*Id.* at 10–11.)  In support, DPZ argues that "the witnesses for DPZ have nothing to do with the other entities" and that there would be "no overlap in testimony" because "Mavruk alone had several supervisors during his tenure of employment with each location," and he "fail[ed] to establish any kind of communication that occurred amongst his supervisors."  (*Id.*)  In addition, DPZ argues that joinder would frustrate the interests of judicial economy because "each claim is loaded with issues and individual challenges, including anticipated litigation over competing versions of events involving multiple witnesses and documents."  (DPZ's Reply Mem. in Supp. of DPZ's Mot. ("DPZ's Reply") 9, Docket Entry No. 19-8.)  Finally, DPZ argues that it would be prejudiced by its inclusion in the suit because a jury would be confused as to whether DPZ is connected to the other Defendants, and because DPZ would be "force[d] to endure an unnecessary financial burden to litigate the case for such *de minimis* involvement in [Mavruk's] career" when Mavruk was only employed at DPZ for four months and "two out of three plaintiffs never worked for DPZ" and were never under DPZ management.  (DPZ's Mem. 8–10; DPZ's Reply 10.)

Mavruk argues that the judicial economy and prejudice factors weigh against severance.  (Mavruk's Opp'n 11–12.)  First, Mavruk argues that severing the claims against DPZ would not serve the interests of judicial economy because it would "increase litigation and cause duplicat[ive] testimony" as DPH and DPZ may have shared employees and staff once DPZ bought the pizza store.  (*Id.*)  In support, Mavruk contends that he likely was not "the only delivery person[] who continued working at Hampton Bays under the same management."  (*Id.*

at 12.)  In addition, Mavruk argues that DPZ failed to show that it would "sustain any prejudice if its motion to sever is denied" because any risk of prejudice is slight and DPZ only has six claims to defend against and will not have to "sit through hours . . . of testimony for causes of actions" unrelated to it.  (*See id.* at 11–12.)

The Court finds that the remaining three factors weigh against severance at this stage of the litigation.  The judicial economy and witnesses and evidence factors weigh against severance in view of Mavruk's allegations regarding shared management and staff between the four entities and, in particular, DPH and DPZ.  (*See id.* ¶¶ 149–150 (stating that both DPH and DPZ paid Mavruk during his employment at the same pizza store location); *id.* ¶ 151 (stating that Mavruk reported to Carlos and Fred throughout his employment with DPH and DPZ); *id.* ¶¶ 155–156, 159 (alleging that Mavruk's harassment occurred on a "regular and pervasive basis" and that Carlos, his initial manager when first employed by DPH, was still his manager after DPZ took ownership of the store and at the time DPZ fired him on allegedly pretextual grounds); *id.* ¶ 160 (stating that Hanley transferred Mavruk from DPZ to W&N following his complaints about Carlos and Fred); *id.* ¶¶ 23, 30, 44, 47, 50 (stating that Hanley had an ownership interest in all four entities for which Mavruk worked and had the authority to hear complaints from Plaintiffs about their employment and make personnel decisions).)  Therefore, it would be more efficient to conduct discovery as part of the same litigation since discovery as to the other Defendants and the same witnesses and evidence will be relevant to the claims against DPZ.  *See Iconix Brand Grp., Inc. v. Roc Nation Apparel Grp., LLC*, No. 17-CV-3096, 2019 WL 5203256, at *2 (S.D.N.Y. Sept. 26, 2019) (finding that pre-discovery severance was not warranted when the plaintiff alleged that the infringing businesses may have been connected through "joint ownership and coordinated promotion" although those allegations were "thin"); *Ardolf*, 332

F.R.D. at 481 (finding that "it 'would surely be a waste of judicial resources' to sever [the] [p]laintiffs' claims, and have to depose all thirty-eight . . . witnesses (including [the] [p]laintiffs and [the] [d]efendant) five times each" when there was witness testimony "relevant to support or disprove the claims of *each individual [p]laintiff*"); *Navar*, 2019 WL 7599890, at *2 ("Plaintiffs contend that they have been subjected to 'systemic, [j]oint [v]enture-wide employment practices' on account of their gender.  Judicial economy would not be served by maintaining two separate actions, with separate motion practice and separate trials, all relating to the same alleged practices.  Moreover, severance would not necessarily advance settlement given [the] [p]laintiffs' contention that [the] [d]efendants operate as joint employers, which, if proven, would entitle [the] [p]laintiffs to recover from all [d]efendants jointly and severally." (quoting *Laser Kitten*, 2019 WL 1147599, at *1)); *Scott v. Goodman*, 961 F. Supp. 424, 448–49 (E.D.N.Y. 1997) (finding that "severance would result in duplicative trials involving overlapping evidence and issues," and that "[t]he danger that the presence of five plaintiffs will unfairly prejudice the jury against the defense seems slight, and can hardly outweigh the significant benefits of consolidating these very similar claims" when the plaintiffs alleged a pattern and practice of retaliatory adverse employment actions and that individuals acted at the direction of or in concert with a director at the defendant agency), *aff'd sub nom. Scott v. Meyers*, 191 F.3d 82 (2d Cir. 1999).

In addition, the prejudice factor weighs against severance at this stage of the litigation. DPZ's arguments as to prejudice revolve around jury confusion.  However, courts have found potential jury confusion insufficient to warrant a finding of prejudice when the claims are properly joined under the requirements of Rule 20.  *Compare Ardolf*, 332 F.R.D. at 481–82 (finding that no prejudice will result if severance was denied because "jurors are perfectly

capable of separating fact patterns that pertain to each individual Plaintiff, while understanding that they may have certain elements in common"); *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 504 (S.D.N.Y. 2013) ("[M]any courts have found that 'any prejudice or confusion [that might occur from trying plaintiffs' claims before a single jury] can be remedied by a carefully drafted jury instruction." (quoting *Epstein v. Kemper Ins. Cos.*, 210 F. Supp. 2d 308, 320 (S.D.N.Y. 2002))); *Kehr*, 596 F. Supp. 2d at 828 ("I am unconvinced that jurors will be unable to separate the different fact patterns presented by the . . . claims during trial or that trying the claims together will result in prejudice to either party."), *with Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 171 (S.D.N.Y. 2009) (discussing how a joint trial would create a risk of prejudice to defendants in the form of confusion of the jury when the defendants were improperly joined).  In addition, given the early stage of the litigation, DPZ will not suffer prejudice by having to go through discovery and can renew its motion to sever before any trial.  *See Iconix Brand Grp., Inc.*, 2019 WL 5203256, at *2 (declining to sever before discovery when the plaintiffs' allegations are of joint ownership and coordination among the defendants "are the kind of allegations that can be difficult to support before discovery"); *Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 36 (D.D.C. 2008) (finding that severance was not warranted for pre-discovery severance of discrimination claims because "[a]t this early point in the litigation, [the defendant] will not suffer any material prejudice by keeping the claims joined").

Because none of the factors support severance at this stage of the litigation, the Court denies the motion for severance without prejudice.  *See Iconix Brand Grp., Inc.*, 2019 WL 5203256, at *2 (denying pre-discovery motion for severance without prejudice when the allegations of joint ownership of a trademark and coordination among the alleged infringers were "thin" but "certainly plausible"); *Oram*, 979 F. Supp. 2d at 505 (denying motion to sever

"without prejudice to renewal or to a further motion to sever and transfer"). If the factual record following discovery does not support Mavruk's allegations of coordination and joint or shared ownership, DPZ may renew its motion in advance of trial.

### III. Conclusion

Accordingly, the Court adopts the R&R in part and declines to adopt it in part. The Court adopts the R&R in part as to Judge Tiscione's recommendations that the Court (1) construe the Rule 12(b)(1) motion as a Rule 12(b)(6) motion, and (2) consider the EEOC Charge and Right to Sue Notice. The Court declines to adopt the R&R as to the merits of the motion to dismiss. The Court denies DPZ's motion to dismiss with prejudice and denies DPZ's motion to sever without prejudice.

Dated: September 27, 2021
Brooklyn, New York

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge